## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LATAZIA CANNON-RIVERA, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| MIDEA AMERICA, CORP., | |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiff Latazia Cannon-Rivera ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Midea America Corp. ("Midea" or "Defendant") and alleges on personal knowledge, investigation of counsel, and information and belief as follows:

### INTRODUCTION

1.      This is a class action brought by Plaintiff on behalf of herself and other similarly situated consumers nationwide who purchased U and U+ Window Air Conditioners manufactured, marketed, sold and distributed by Defendant under the brand names including Midea, Comfort Aire, Danby, Frigidaire, Insignia, Keystone, LBG Products, Mr. Cool, Perfect Aire and Sea Breeze ("Noticed Products"[1]) for personal or household use and not for resale ("Class"[2] or "Class Members").

2.      Defendant sold the Noticed Products at Costco, Menards, Home Depot, Best Buy

---

[1] Plaintiff reserves the right to amend or modify the definition of the Noticed Product based on information learned in discovery and further investigation.

[2] The precise definition of the Class is found below. Plaintiff reserves the right to amend or modify the definition of the Class based on information learned in discovery and further investigation.

and other stores nationwide, as well as online at Midea.com, Amazon.com, Costco.com, Menards.com, HomeDepot.com, Lowes.com, Walmart.com, BJs.com, BestBuy.com and other websites from March 2020 through May 2025 for between \$280 and \$500.[3]

3.    On June 5, 2024, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 1.7 million units of the Noticed Products because pooled water in the air conditioners can fail to drain quickly enough, which can lead to mold growth.[4]

4.    By the time the recall was issued, Defendant had received at least *152* reports of mold in the air conditioners, including *17* reports of consumers experiencing symptoms such as respiratory infections, allergic reactions, coughing, sneezing, and/or sore throats from mold exposure.[5]

5.    In its Recall Notice, Defendant advises consumers who have one of the listed models to participate in the recall immediately.[6] For consumers who choose a repair, Midea will provide a technician to install a new drain plug or send consumers a repair kit that includes a new drain plug and bubble level, depending on the model. Defendant further advises consumers who continue using the air conditioners while awaiting a repair to visit www.MideaUrecall.expertinquiry.com for instructions on how to inspect their unit prior to continuing use.

6.    For consumers who choose a refund, Midea requires consumers to either (1) unplug the product, cut the power cord, and write "Recalled" on the product, submit photographic evidence of doing so, and dispose of it in accordance with local waste disposal

---

[3] *See* https://www.cpsc.gov/Recalls/2025/Midea-Recalls-About-1-7-Million-U-and-U-Window-Air-Conditioners-Due-to-Risk-of-Mold-Exposure (Last accessed June 24, 2025).
[4] *Id.*
[5] *Id.*
[6] https://mideaurecall.expertinquiry.com/?lang=en (Last accessed June 24, 2025).

requirements; or (2) return the unit to Midea using a free pre-paid label.

7.      The hazardous nature of the Noticed Product and propensity for harm from the Noticed Products makes a full refund the proper method of recall. However, in order to achieve this recall Defendant makes the process so arduous for ordinary consumers that it deters consumers from doing so.

8.      Consumers like Plaintiff trust manufacturers such as Defendant to sell appliances like the Noticed Products that are safe and free from known safety defects.

9.      Plaintiff and all reasonable consumers are injured at the point of purchase because they had no way of knowing of the Noticed Products' safety defect.

10.      As a result of Defendant's misconduct, misrepresentations, and omissions, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

11.      Plaintiff and the Class bring this suit for economic damages they sustained as a result. Given the massive quantities of the Noticed Products sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for those affected.

## **PARTIES**

11.      Plaintiff Latazia Cannon-Rivera is and was at all times relevant to this matter, a State of New York resident residing in Poughkeepsie. Plaintiff is a citizen of New York.

12.      Defendant Midea America Corp. is a New Jersey corporation headquartered in Parsippany, New Jersey. At all relevant times hereto, Defendant has designed, built, manufactured, marketed, distributed, promoted, and/or marketed and sold the Noticed Products and numerous other consumer products nationwide, including in New York.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) & (d) because Defendant maintains minimum contacts with the United States and this State, and intentionally avails itself of the laws of the United States and this State by conducting a substantial amount of business in New York. On information and belief, Defendant manufactures, distributes, and markets the Noticed Product in New York. At least in part because of Defendant's misconduct as alleged in this lawsuit, the Noticed Product was sold to and purchased by consumers in this State, including Plaintiff. For these same reasons, venue properly lies in this District and vicinage pursuant to 28 U.S.C. §§ 1391(a), (b), and (c).

15.     Venue is also proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

16.     Defendant claims its mission is to "create solutions that make everyday life better," and that it offers products "thoughtfully designed with real-life needs in mind."[7] Air conditioning units are just one of the many types of products it offers, and it claims consumers can "chill out in style," and "stay cool all summer long."[8]

17.     Specifically, Defendant marketed and sold a variety of U and U+ Window Air

---

[7] See https://www.midea.com/us/about-midea (Last accessed June 25, 2025).
[8] See https://www.midea.com/us/Heating_Cooling/window-air-conditioners (Last accessed June 25, 2025).

Conditioners, designed to fit in windows, under the brand names including Midea, Comfort Aire, Danby, Frigidaire, Insignia, Keystone, LBG Products, Mr. Cool, Perfect Aire and Sea Breeze and include the following model numbers:

| Midea Model Numbers | Frigidaire Model Numbers |
|---|---|
| MAW08AV1QWT | GHWQ085WD1 |
| MAW08AV1QWT-C | GHWQ105WD1 |
| MAW08U1QWT | GHWQ125WD1 |
| MAW08V1QWT | **Insignia Model Numbers** |
| MAW08V1QWT-S | NS-AC8WU3 |
| MAW08V1QWT-T | NS-AC8WU3-C |
| MAW08W1QWT | **Keystone Model Numbers** |
| MAW10U1QWT | KSTAW08UA |
| MAW10V1QWT | KSTAW10UA |
| MAW10W1QWT | KSTAW12UA |
| MAW12AV1QWT | **LBG Products Model Number** |
| MAW12AV1QWT-C | QB-8K CO |
| MAW12U1QWT | **Mr. Cool Model Numbers** |
| MAW12V1QWT | MWUC08T115 |
| MAW12V1QWT-M | MWUC10T115 |
| MAW12V1QWT-S | MWUC12T115 |
| MAW12W1QWT | **Perfect Aire Model Numbers** |
| **Comfort Aire Model Numbers** | 1PACU10000 |

| | |
|---|---|
| RXTS-101A | 1PACU12000 |
| RXTS-121A | 1PACU8000 |
| RXTS-81A | **Sea Breeze Model Numbers** |
| **Danby Model Numbers** | MWAUQB-12CRFN8-BCN10 |
| DAC080B6IWDB-6 | WAU310YREX |
| DAC080B7IWDB-6 | WAU312YREX |
| DAC100B6IWDB-6 | WAU38YREX |

### A.    The Noticed Products Are Dangerous and Unsafe to Use.

18.    The Noticed Products contain a defect by which pooled water in the air conditioners can fail to drain quickly enough, which can lead to mold growth, causing serious health issues, including respiratory issues and infections.

19.    This defect poses a health and safety hazard to consumers and, indeed, at the time Defendant issued its Safety Recall, it was already aware of 152 reports from consumers of mold, including at least 17 reports of its causing health complications from allergic reactions to respiratory infections.

20.    On or about June 5, 2025, the U.S. Consumer Product Safety Commission announced a Safety Recall for Defendant's U and U+ window air conditioners due to the hazards that they pose to consumers.

### B.    The Injury Risks to Plaintiff and Class Members Has Significantly Devalued The Noticed Products and Made Them Unsafe to Use.

21.    As a result of the injury risks to users associated with the use of the Noticed Product, by Defendant's own admission in its Recall Notice, the Noticed Products are unsafe to use and have been significantly devalued.

22.    Consumers understandably seek safe products when it comes to items like home appliances.

23.    Plaintiff, like all reasonable consumers, would not have purchased the Noticed Product had she known of its dangerous propensities. Moreover, the insufficient recall put forward by Defendant does not make Plaintiff or other consumers whole, as a proper recall would include a refund for the item purchased in a manner relatively easy for consumers to take advantage of. Yet, the recall provides only a repair kit, or a refund whose process of collection is purposefully arduous as to deter consumers from taking advantage of it.

24.    Therefore, the Noticed Product is worthless because it cannot be used without risk of serious injury.

**C.    Plaintiff's Purchase**

25.    Plaintiff Latazia Cannon-Rivera is an adult at least 18 years of age and a citizen of New York, residing in Poughkeepsie, New York.

26.    On or about March 26, 2021, Plaintiff purchased for her own use a Midea U Inverter Window Air Conditioner 12,000BTU with model number MAW12V1QWT online from Amazon.com for approximately $500.

27.    Plaintiff read information represented by Defendant on its website, on its authorized product pages on online retailers, on front-label packaging, and on advertisements and understood the Noticed Product to be safe and free from hazardous injuries.

28.    Plaintiff was unaware of the dangerous propensity for mold growth by the Noticed Product at the point of purchase. She did not find out about the defect until the recall was announced, which she learned of on social media.

29.    Plaintiff is worried about using the air conditioner, as the likelihood of dangerous

mold is still very high, and she has been provided no information from Defendant on how to properly clean any potential mold, so she has not turned on the air conditioner since learning of the recall.

30.    Plaintiff would not have purchased the Noticed Product or would have purchased it for much less had she known of its dangerous propensity for mold. As such, Plaintiff was injured at the point of sale.

31.    Plaintiff is not made whole by Defendant's inadequate recall and has lost the benefit of the bargain by Defendant's omissions and failure to fully refund and recall the Noticed Product.

**ESTOPPEL FROM PLEADING AND**
**TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

32.    Plaintiff and the members of the Class had no way of knowing about Defendant's conduct concerning the safety risks associated with the use of the Noticed Products.

33.    Neither Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein. For these reasons, all applicable statutes of limitation have been tolled by the discovery rule concerning claims asserted by Plaintiff and the Class.

34.    Further, by failing to provide notice of the risks of health and safety concerns form mold associated with the continued use of the Noticed Products, Defendant concealed its conduct, and the existence of the claims asserted herein from Plaintiff and the Class members.

35.    Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiff and Class members. Plaintiff and Class members were unaware of the facts

alleged herein without any fault or lack of diligence on their part and could not have reasonably

discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may

apply to the claims of Plaintiff or Class members should be tolled.

## **CLASS ACTION ALLEGATIONS**

36.     Plaintiff brings this action on behalf of herself and the following Class pursuant

to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the

Class is defined as:

> **Nationwide Class:** All persons in the United States who purchased
> the Noticed Products for personal use and not for resale during the
> Class Period.
>
> Alternatively, Plaintiff seeks to represent a Subclass of New York
> purchasers:
>
> (**New York Subclass):** All persons in New York who purchased the
> Noticed Product for personal use and not for resale during the Class
> Period.

37.     Excluded from the Class are (a) any officers, directors or employees, or immediate

family members of the officers, directors, or employees of the Defendant or any entity in which

the Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for the

Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their

immediate family members. The "Class Period" begins on the date established by the Court's

determination of any applicable statute of limitations, after consideration of any tolling, discovery,

concealment, and accrual issues, and ends on the date of entry of judgment.

38.     Plaintiff reserves the right to amend the definition of the Class if discovery or

further investigation reveals that the Class should be expanded or otherwise modified.

39.     **Numerosity.** Class Members are so numerous and geographically dispersed that

joinder of all Class Members is impracticable. While the exact number of Class Members remains

unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members, as the recall covers more than 1.7 million units of the Noticed Products. Moreover, the number of members of the Class may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

40.    **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.   Whether the Noticed Products contain the defect alleged herein;

    b.   Whether Defendant failed to appropriately warn Plaintiff and the Class of the damage or injury that could result from the use of the Noticed Products;

    c.   Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Class.

    d.   Whether Defendant promoted the Noticed Products with false or misleading statements of fact and material omissions;

    e.   Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Noticed Products is deceptive, unfair, or misleading;

    f.   Whether Defendant's conduct violates public policy;

    g.   Whether Plaintiff and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

    h.   Whether Defendant violated the NY GBL;

    i.   Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Noticed Products;

    j.   Whether Plaintiff and members of the putative Class are entitled to monetary

10

damages and, if so, the nature of such relief; and

k.  Whether Plaintiff and members of the putative Class are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

41.  **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff, and the Class Members each purchased and used the Noticed Products, and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative Class members. Plaintiff and all members of the putative Class have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omissions regarding the Noticed Product's safety and insufficient remedy and recall resulting therefrom.

42.  **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Class.

43.  **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and Class members will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing

11

incompatible standards of conduct for Defendant.

44.    **Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Class members, thereby making appropriate final injunctive relief, as described below, concerning the Class members as a whole.

45.    **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Class can seek redress for the harm caused by Defendant.

46.    In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant;

b. Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class members to protect their interests; and

c.  Defendant has acted or refused to act on grounds generally applicable to the members of the putative Class, thereby making appropriate final and injunctive relief concerning the putative Class as a whole.

47.    In the alternative to those claims seeking remedies at law, Plaintiff and Class members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **UNJUST ENRICHMENT/QUASI-CONTRACT**
### **(On Behalf of Plaintiff and Class Members)**

48.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

49.    Plaintiff's individual claims are brought under the laws of the State in which she purchased her Noticed Product (New York).

50.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Noticed Products, which Defendant knew and realized.

51.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Class Members were given with the expectation that the Noticed Products would have the qualities, characteristics, and suitability for use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

52.    By its wrongful acts and omissions described herein, including selling the Noticed Products, which contain both a safety defect described in detail above and which are insufficiently recalled, did not otherwise perform as represented and for the particular purpose for which they

13

were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

53.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

54.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Noticed Products.

55.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Noticed Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the defective Noticed Products, and Defendant misrepresented by omission the nature of the Noticed Products and knowingly marketed and promoted dangerous and defective Noticed Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Noticed Products based on the exact representations if the true facts concerning the Noticed Products had been known.

56.    Defendant was also unjustly enriched in retaining the revenues derived from Class Members' purchases of the Noticed Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant misrepresented by omission the propensity for dangerous injury of the Noticed Products, which caused economic injuries to Plaintiff and the Members of the Class because they would not have purchased the Noticed Products based on the exact representations if the true facts concerning both the safety and the

nature of the inadequate recall had been known.

57.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Noticed Products on the same terms or for the same price had they known the true nature of the Noticed Products and the misstatements regarding what the Noticed Products was and its characteristics.

58.     Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Noticed Products would work as represented by Defendant in advertising, on Defendant's websites, and the Noticed Products' labels and packaging and would be free from health and safety defects. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

59.     Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

60.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## COUNT II
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and the New York Subclass)

61.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

62.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . .."

63.     The conduct of Defendant alleged herein constitutes recurring, "unlawful"

deceptive acts, and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

64.    Defendant misleadingly and deceptively represents the Noticed Products to consumers, including Plaintiff and New York Subclass members.

65.    Defendant further omitted material facts, including the Noticed Products' dangerous health and safety concerns, or that the recall does not adequately make consumers like Plaintiff whole.

66.    Defendant's unlawful consumer-oriented conduct is misleading in a material way because Plaintiff and the other Class Members believed that the Noticed Products were safe to use.

67.    Plaintiff and other Class Members paid extra money for safe and secure window air conditioners. Had Plaintiff and reasonable consumers known that the Noticed Products had a serious health and safety defect, they would not have purchased the Noticed Products at all or at least would not have paid as much for the Noticed Products.

68.    Defendant engaged in its unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

69.    Plaintiff and other Class Members have been injured in as much as they, having viewed the Noticed Product's label, paid a premium for the Noticed Products. Accordingly, Plaintiff and other Class Members paid more than what the Noticed Products they bargained for and received was worth.

70.    Defendant's conduct as alleged herein constitutes a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a), and Plaintiff and other members of the Class have been damaged thereby.

71.    As a result of Defendant's deceptive acts and practices, Plaintiff and other Class

Members are entitled to monetary and compensatory damages, restitution, and disgorgement of all money obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

### COUNT III
### VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass)

72.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

73.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

74.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

75.    Defendant's labeling contains a deceptive and materially misleading statement concerning its Noticed Products in as much as they misrepresented the Noticed Products were safe to use and free from a dangerous heath and safety defect.

76.    Defendant's marketing and labeling contains deceptive and materially misleading omissions concerning the existence of a dangerous propensity for injury.

77.    Plaintiff and other Class Members have been injured inasmuch as they, having viewed Defendants' label and marketing materials, paid a premium for the Noticed Products.

17

Plaintiff and other Class Members paid more than what the Noticed Products they bargained for and received was worth.

78.    Defendant engaged in unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

79.    Defendant's material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large.

80.    As a result of Defendant's acts and practices in violation of GBL § 350, Plaintiff and Class Members are entitled to monetary and compensatory damages, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $500 per Products purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Class, prays for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendant bear the costs of any notice sent to the Class;

C. Declaring that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the Noticed Products or order Defendant to make full restitution to Plaintiff and the members of the Class;

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendant to fully and adequately disclose the safety risks associated with the Noticed Products to anyone who may still be at risk of buying and using the Noticed Products;

G. Granting an Order requiring Defendant to fully and adequately disclose the continued risk

if replacing the bed frame is the only recourse as part of the recall;

H.  Ordering a jury trial and damages according to proof;

I.  Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

K.  Awarding prejudgment interest, and punitive damages as permitted by law; and

L.  Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

June 27, 2025                                  Respectfully submitted,

/s/ *Mason Barney*
Mason A. Barney (4405809)
Leslie Pescia*
SIRI | GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis*
Daniel Tomascik*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
E-mail: klaukaitis@laukaitislaw.com
            dtomascik@laukaitislaw.com

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and Putative Class Members*